Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6357 | **DATE** | 7/30/2002 |
| **CASE TITLE** | Devinder (Dave) Wahi vs. Northern Trust Corporation a/k/a Northern Trust Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing is set for August 29, 2002 at 9:30 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [16-1] is granted in part and denied in part. A status hearing is scheduled for August 29, 2002 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| ✓ | Notified counsel by telephone. | JUL 3 1 2002 |
| ✓ | Docketing to mail notices. | date docketed |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEVINDER (DAVE) WAHI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 00 C 6357 |
| v. ) | |
| ) | |
| NORTHERN TRUST CORPORATION ) | Judge Joan B. Gottschall |
| a/k/a NORTHERN TRUST BANK, ) | |
| ) | |
| Defendant. ) | |

**DOCKETED JUL 3 1 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff Devinder Wahi filed a three-count complaint against his former employer, The Northern Trust Company ("NTC"), alleging that NTC terminated his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* NTC now moves for summary judgment. For the reasons set forth below, the court grants the motion in part and denies it in part.

## Background

Plaintiff Wahi was born in 1942 in India and is a Hindu. He was employed with NTC from May 1997 to November 1999. To support his claims of age, national origin, and religious discrimination, he relies primarily on statements made by Mark Schneider, a division supervisor, while Wahi worked at NTC. They follow.

(1) In the spring of 1998, shortly after Wahi was transferred into Schneider's group, Schneider told him "You better be a team player, perform. Or else you'll have a hard time finding a job at this age." (Wahi Dep., Pl.'s Ex. 10, at 5:3-7.)

(2) Also around this time, Wahi alleges that Schneider asked him whether "all Indians worship idols" (*Id.* at 28:13) and whether Wahi worships "monkey head gods and elephant head gods." (*Id.* at 28:22-23.)

(3) In December 1998, Wahi attended an NTC Christmas party. Wahi alleges that at this party Schneider asked him, "How come you didn't come and take a picture with me as Santa Claus?" (*Id.* at 117:22-23.) Schneider added, "Oh, is it because you're a goddamn Hindu?" (*Id.* at 118:3-4.)

(4) During the summer of 1999, Schneider met with Wahi to discuss Wahi's tardiness in completing an assignment. During the meeting, Schneider allegedly warned Wahi that he had better meet his deadlines or "you'll be out." (*Id.* at 10:11-12.) He further commented that it would be difficult for Wahi to find a job at his age. (*Id.* at 10:14-15.)

(5) Wahi explained to Schneider that he was tardy in completing the assignment because his father had been hospitalized and that he had to bring his father items from home because his father was a Hindu and a vegetarian. Schneider allegedly replied, "Oh, you and your goddamn Hindu traditions." (*Id.* at 31:10-11.)

(6) On August 4, 1999, Wahi sent Schneider an email message regarding Schneider's management style, prompting another meeting between the two men. During this meeting, Wahi requested to be transferred to another position because of Schneider's prejudices against his nationality and religion. He claims that Schneider responded to this request by stating, "[T]he

only way you'll go is out of the door . . . You won't find a job at this age, I'll bet you that. Last time you got out of my control, this time you won't. I'll make sure that you're out . . . and I'll make your life miserable." (*Id.* at 109:15-21.) Schneider allegedly further commented that "You Indians, you act smart. I'll make sure you're out. You can't act smart with me." (*Id.* at 110:9-11.)

(7) In October 1999, Wahi attached the wrong version of an assignment in an email to Schneider. He realized his mistake, and later that day, he sent Schneider the correct version. He met with Schneider a few days later and apologized for sending the wrong document. Wahi alleges that Schneider responded, "All you Indians lie. I don't trust you." (*Id.* at 19:23-24.)

On October 21, 1999, Schneider recommended that Wahi be terminated. Wahi's immediate supervisor concurred. Wahi was terminated November 1, 1999. He claims that following this termination his heart condition escalated and he experienced increased palpitations. He also claims that he suffered symptoms of emotional distress including depression, lack of inspiration, oversleeping, and tension headaches.

**Standard of Review**

Summary judgment is proper "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court evaluates the admissible evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of

material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

**Discussion**

Wahi claims that NTC discriminated against him by terminating him because of his national origin (Count I), his religion (Count II), and his age (Count III). NTC moves for summary judgment on all three counts. In addition, NTC asks the court to dismiss Wahi's claim for emotional distress damages, arguing that Wahi cannot support this claim.

**I. Discrimination Claims**

Title VII makes it unlawful for an employer to discriminate against an employee based on an employee's national origin or religion. 42 U.S.C. § 2000e-2(a)(1). The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) (citing 29 U.S.C. § 623(a))). To prevail on either a Title VII or an ADEA claim, a plaintiff has the burden of proving intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Pitasi*, 194 F.3d at 714. A plaintiff can prove intentional discrimination by one of two methods: (1) the direct method, using direct evidence of discriminatory intent; or (2) the indirect, burden-shifting method. *Gonzales*, 133 F.3d at 1031; *Pitasi*, 184 F.3d at 714.

Under the direct method, as the Seventh Circuit has acknowledged, different panels have used different standards when determining what constitutes direct evidence of discriminatory intent. *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 574 (7th Cir. 2001), *cert. denied*,

122 S. Ct. 923 (2002). Sometimes the court has applied a strict standard, holding that "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Id.* (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). Other times the court has employed a broader definition, finding that "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Id.* (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001)).

No matter which direct-method standard the court adopts, the plaintiff must show that the discriminatory acts "were related to the employment decision in question." *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686-87 (7th Cir. 1991). "[B]igotry, per se, is not actionable. . . . [T]here must be a real link between the bigotry and the adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Thus, even if an employment decisionmaker utters discriminatory remarks, his remarks alone might not give rise to an inference of discrimination. *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993). However, if the decisionmaker's comments were made "(1) around the time of, and (2) in reference to, the adverse employment action complained of," a court may find that the plaintiff has provided direct evidence. *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000).

If a plaintiff cannot provide direct evidence of discriminatory intent, he may be able to prevail by using an alternative method, the indirect, burden-shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties agree that to succeed under this method, Wahi must first establish a prima facie case of employment discrimination by

showing four elements: (1) he is a member of a protected class; (2) he was performing to the defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. *Gonzales*, 133 F.3d at 1032. If the plaintiff establishes these elements, the burden then shifts to the defendant to establish a legitimate, non-discriminatory reason for the plaintiff's termination. *Id.* If the defendant meets its burden, the plaintiff must then show that the defendant's stated reason is pretextual. *Id.*

A. Count I: National Origin

To support his national origin discrimination claim, Wahi points to an August 1999 meeting between Schneider and Wahi. The meeting took place soon after Wahi's August 4, 1999 email to Schneider in which Wahi complained about Schneider's management style. Wahi claims that Schneider remarked, "All you Indians lie. I don't trust you. You Indians, you act smart. I'll make sure you're out. You can't act smart with me."

NTC first argues that the portion of the statement beginning with "You Indians, you act smart" should be stricken because it directly contradicts Wahi's earlier testimony.[1] Wahi's deposition was taken over the course of two days, April 18 and 26, 2001. On April 18, Wahi testified only to the "All you Indians lie" comment, in connection with the October 1999 meeting between Wahi and Schneider. When asked whether he could provide additional instances of national origin discrimination, he responded "No. I think that's what comes to mind right now."

---

[1] NTC also argues that its entire Statement of Uncontested Facts should be deemed admitted because Wahi has failed to comply with Local Rule 56.1(b)(3) by not providing adequate record citations when he refers to facts in his argument. The court disagrees. For example, when Wahi mentions Schneider's August 1999 statement in his response brief, he clearly cites to his own fact statement, which cites to the appropriate deposition testimony. Wahi has substantially complied with the local rules.

6

(Wahi Dep., Def.'s Ex. Z at 30:2-3.) He added: "I can't think right now." (*Id.* at 30:6.) Wahi then conferred with his lawyer off the record. After he restarted his testimony, he discussed a separate incident, but added no more testimony regarding the "All you Indians lie" comment. Then, the following exchange took place between NTC's counsel and Wahi: "Q: Any other reason you believe that you were discriminated against on the basis of your national origin when the bank terminated you? A: No." (*Id.* at 33:5-8.) On April 26, 2001, Wahi provided the additional "you act smart" and "you're out" comments in his deposition testimony, when discussing the meeting between himself and Schneider in August 1999. NTC's counsel asked Wahi what caused him to refresh his recollection about the new comments. He answered that upon seeing the August 4, 1999 email that he sent to Schneider prompting the meeting, he was able to recall the conversation more accurately.

NTC cites *Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir.1998), and *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206 (7th Cir. 1993), in support of its argument to strike Wahi's deposition testimony. *Adusumilli* is inapposite, as it observed only that "[w]here deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . . ." 164 F.3d at 360 (internal quotation marks omitted). In this case, Wahi has submitted no affidavit that contradicts his deposition testimony. In *Unterreiner*, the Seventh Circuit noted: "A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart." 8 F.3d at 1210 (internal quotation marks omitted). In that case, the plaintiff had testified at his deposition that other than some automobile leasing information, he did not recall what was posted on a certain bulletin board. He subsequently submitted an

7

affidavit in which he unequivocally averred that a disputed document was not posted on the board. The Seventh Circuit held that the second statement was so unlikely that it was unreliable. *Id.* ("A party cannot claim a lack of general knowledge about a subject and later make a statement which requires detailed knowledge about the same subject.").

This case is different. During his deposition on April 18, Wahi made it apparent that he was having trouble recalling the details of his conversations with Schneider. His otherwise unequivocal "No" response must be read against this backdrop. On April 26, after seeing the email that prompted the conversation in August 1999, Wahi remembered the details of that meeting. Considering all the evidence together, a reasonable factfinder could believe that Schneider made the statement, "You Indians, you act smart. I'll make sure you're out." Wahi's addition of these comments does not directly contradict his earlier testimony. Thus, the court will consider the entire statement.

Schneider's alleged statement satisfies even the stricter direct evidence standard. Schneider, a decisionmaker in Wahi's termination, virtually admitted that he would fire Wahi because of his Indian origin. Although his comments were made almost three months before Wahi's termination, they were directly related to it.

NTC next argues that even if Wahi has produced direct evidence of discriminatory intent, the evidence of Wahi's poor work performance is "so one-sided that [the defendant] must prevail as a matter of law." *Sanghvi*, 258 F.3d at 575 (quoting *Anderson*, 477 U.S. at 252). The *Sanghvi* court suggested that in this rare situation, even where the plaintiff has provided direct evidence of discrimination, summary judgment may be granted, "at least where the purportedly direct evidence is not an actual admission." *Id.* Unlike the evidence in *Sanghvi*, in this case,

8

Schneider's statement that "You Indians, you act smart. . . . I'll make sure you're out" is tantamount to an actual admission. Assuming Wahi's testimony is true, despite all of NTC's evidence of Wahi's poor performance, a reasonable jury could find in his favor based on this statement alone. *Cf. Sanghvi*, 258 F.3d at 572 (on a racial discrimination claim, holding that record was one-sided despite defendant's statement, "Being an older, foreign-born physician, how comfortable do you feel dealing with young, white American women?"). Summary judgment is denied with respect to Count I.

B. Count II: Religion

Wahi points to three of Schneider's comments as evidence of religious discrimination. In each, Schneider either asked Wahi whether he worships idols or referred to Wahi as a "goddamn Hindu." None of these comments was made around the time of, or in reference to, Wahi's termination. (Schneider's latest comment was made several months prior to Wahi's termination.) Therefore, without more, Wahi would likely fail to satisfy the direct-method standard. *See Hunt*, 219 F.3d at 652.

However, there is more. The court has already held that Schneider's comments regarding Wahi's national origin ("You Indians, you act smart. . . . I'll make sure you're out") constitute a virtual admission of discriminatory intent. In the spring of 1998, Wahi claims that Schneider asked him whether "all Indians worship idols." This evidence indicates that Schneider concluded that Wahi's national origin and religion have overlapping characteristics. When Schneider said "Indian" it would not be unreasonable to conclude that he actually meant "Hindu."[2] Schneider's

---

[2] Others have noted the tendency to attribute characteristics of the Hindu religion to Indian nationality and vice versa. *See, e.g., Webster's Ninth New Collegiate Dictionary* 571 (1983) (defining Hindu as a "native or inhabitant of India"). In *United States v. Clemmons*, 892 F.2d 1153 (3d Cir. 1990), the court reviewed a *Batson* challenge to a prosecutor's strike of a potential

9

comments about Wahi's being a "goddamn Hindu" clearly reflect his animus towards Wahi's religion. Therefore, the combination of Schneider's "religion" comments and "national origin" comments could lead a jury to conclude that Schneider terminated Wahi because he is Hindu. *Cf. Chacko v. Dynair Servs., Inc.*, No. 96 CV 2220, 2001 WL 930774, at *8 (E.D.N.Y. June 14, 2001) (holding that plaintiff's status as an Indian satisfied the "protected class" requirement for his Title VII claims of either race *or* national origin discrimination). This combination satisfies the direct-method standard because it clearly reflects a propensity by Schneider to evaluate Wahi based on his national origin, religion, or a combination of both. *See Walker*, 241 F.3d at 888. The court also concludes that the record is not so one-sided that no jury could conclude that Wahi's termination was based on religious discrimination. Summary judgment is denied as to Count II.

C. Count III: Age

Wahi fails to provide direct evidence of discriminatory intent for his age claim. He points to three of Schneider's comments as direct evidence; in each statement, Schneider allegedly told Wahi that he would have a hard time finding a job at his age. None of Schneider's comments about Wahi's age suggest that age was a motivating factor in Schneider's decision to terminate

---

juror. The district court had concluded that, because the juror appeared to be of Asian-Indian origin, it would have been rational for the prosecutor to conclude that the juror was Hindu. Therefore, the district court determined that the strike was not racially motivated but rather based on concerns about the potential juror's religious beliefs. The Third Circuit affirmed. *Id.* at 1157; *see also id.* at 1161 (Higginbotham, J., concurring) ("I find it more difficult to dissect as neatly as the majority the intertwining cords of race and religion in this case"); *see also id.* at 1161 n.7 (Higginbotham, J., concurring) (noting that "[t]he overwhelming majority of the world's Hindus live on the Indian subcontinent" and that "Hindus make up 82.6% of India's population of over 800,000,000"). Since 1990, the statistics have changed. The CIA's *World Factbook 2001* reports that India's population is over one billion and is comprised of 81.3% Hindus. *The World Factbook 2001*, available at http://www.odci.gov/cia/publications/factbook/.

him. *See Gorence*, 242 F.3d at 762 ("[T]here must be a real link between the bigotry and the adverse employment action."). The comments were not made around the time of, or in reference to, Wahi's termination. *See, e.g., Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir. 1996) (holding that defendant's comment "I don't want older people," made while hiring other employees, did not constitute direct evidence of age discrimination in plaintiff's termination). Furthermore, the statements are subject to more than one interpretation—they are not necessarily discriminatory. To say that someone will "have a hard time finding a job at this age" indicates much less animus than, for example, "I fired Judy because she was an old woman," or even "Old women are hard to deal with." *Gorence*, 242 F.3d at 752.

Wahi also fails to prove age discrimination under the *McDonnell Douglas* method because he fails to establish a prima facie case of discrimination. Specifically, Wahi fails to provide evidence of the fourth element, that NTC treated similarly situated, younger employees more favorably than he was. Wahi makes a conclusory allegation of less favorable treatment in his complaint; however, he bears the burden of proof on this issue and may not rest on the pleadings alone. *Celotex Corp.*, 477 U.S. at 322-23. Wahi's only other reference to this element is his assertion that "Defendant does not dispute that . . . similarly situated individuals not in the protected class were treated more favorably." (Pl.'s Resp. at 6.) Contrary to Wahi's argument, NTC clearly disputes this element both in its initial motion for summary judgment (Def.'s Mot. at 10) and in its reply to plaintiff's response (Def.'s Reply at 8). Even upon an independent review of the record, the court is unable to find any evidence to support the element. Wahi cannot succeed under the *McDonnell Douglas* approach. Summary judgment is granted with respect to Count III.

## II. Emotional Distress

NTC contends that Wahi did not provide sufficient evidence of emotional and mental distress because Wahi must rely solely on his own deposition testimony.[3] NTC argues that Wahi gave only "conclusory statements" alleging his emotional distress, which cannot "reasonably and sufficiently explain the circumstances of his injury." *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990) (internal quotation marks omitted).

In *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992), the Seventh Circuit clarified *Biggs* and held that an injured person's testimony alone could provide sufficient evidence of emotional distress:

> [I]n determining whether the evidence of emotional distress is sufficient to support an award of damages, we must look at both the direct evidence of emotional distress and the circumstances of the act that allegedly caused that distress. The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action; consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional distress.

In this case, Wahi's testimony provides direct evidence of emotional distress. Wahi testified that he was depressed because Schneider had a "design" to get rid of him and carried it out. (Wahi Dep., Def.'s Ex. Z at 142:7-9.) Wahi further testified that his heart condition escalated after his termination, evidenced by an increase in palpitations, because at the time leading up to and following his termination, he was nervous. This evidence goes beyond mere conclusory statements because Wahi attempted to *explain* how he suffered emotional distress from NTC's actions. As the court in *Balistrieri* noted, a "jury is in the best position to evaluate . . . the

---

[3] NTC argues that letters written by two physicians should be stricken as inadmissible. The court expresses no opinion on the matter because Wahi's deposition testimony alone is sufficient evidence of emotional distress.

witness's explanation of [the plaintiff's] injury. Moreover, the jury is able to examine the witness personally; a jury may glean as much if not more about a witness's emotional state from the witness's demeanor than from his attempts to explain the nature of his injury in words." 981 F.2d at 933 (affirming a jury's damages award).

Moreover, Schneider's repeated comments to Wahi (e.g., "All you Indians lie. I don't trust you. You Indians, you act smart. I'll make sure you're out.") are, in the court's opinion, inherently degrading and humiliating. It is therefore reasonable to infer that Wahi suffered humiliation or distress from Schneider's actions and more conclusory evidence is acceptable. Wahi has created a genuine issue of material fact regarding his emotional distress claim. NTC's motion for summary judgment on this issue is denied.

**Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 30, 2002

13